CRANDALL HORSE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 7924.    Promulgated ·October 31, 1927.

1. Fair market value of plant and leases as of March 1, 1913,
determined.

2. Due to lack of evidence, the unexhausted value of plant can
not be determined for invested capital.

3. Capital additions made subsequent to March 1, 1913, deter-
mined for invested capital purposes. Arbitrary and erroneous
write-off of asset value of plant and lease restored for invested
capital purposes.

*Benjamin B. Pettus, Esq.*, and *Wilton H. Wallace, Esq.*, for
petitioner.

*Shelby S. Faulkner, Esq.*, for the respondent.

This proceeding results from the determination by respondent of
deficiencies in income and profits taxes for the years 1919, 1920, and
1921, in the respective amounts of $618.97, $295.52, and $1,851.34.
The issues involved relate to—

(1) The amount to be allowed as a deduction for the years 1919,
1920, and 1921 on account of the exhaustion of a lease, and the value
of the same property allowable for invested capital purposes.

(2) The amount to be allowed as a deduction from income for
the years 1919, 1920, and 1921 on account of the exhaustion of addi-
tions to the plant of petitioner made after March 1, 1913, and the
cost of the same property properly allowable in invested capital for
said years.

FINDINGS OF FACT.

Petitioner is a New York corporation with principal offices at
Buffalo, and is engaged in selling horses on a commission basis, and
buying and selling horses on its own account. Petitioner was or-
ganized prior to 1906, succeeding a partnership known as Crandall &
Co. Included in the assets acquired from the partnership were a
valuable lease to certain lands located in Buffalo and a number of
barns located thereon. The lease which petitioner acquired pro-
vided as follows:

THIS INDENTURE, Made this first day of May, One thousand eight hundred and
ninety-four between THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD
COMPANY, party of the first part, and ADELBERT D. CRONK, MARGARET I. CRAN-
DALL, both of Buffalo, New York, WILLIAM FISS and JOHN B. DOERR, both of
New York City, New York, composing the firm of Crandall and Company,
parties of the second part.

WITNESSETH: that the said party of the first part, in consideration of the
rents, covenants and agreements hereinafter mentioned, reserved and contained
on the part of the said parties of the second part, to be paid, kept and per-

formed, has demised and let, and by these presents does demise and let unto the said parties of the second part, the following described premises, viz:

\*      \*      \*      \*      \*      \*      \*

Together with the appurtenances, for the term of twenty years from the first day of May, One thousand, eight hundred and ninety-four, at the annual rent or sum of One thousand (1,000) Dollars, to be paid in equal quarterly payments in advance, to wit: on the first days of August, November, February and May in each and every year,—

Provided, that if the yearly rent above reserved, or any part thereof, shall be unpaid on any day of payment whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants or agreements herein contained, on the part of the said parties of the second part, then and from thenceforth it shall be lawful for the said party of the first part to reenter upon said demised premises, and the sum to have again as in its first and former estate.

The premises above described are let and are to be used for the following purposes only: for the purpose of a horse and mule market, and for the erection of proper and suitable buildings and structures thereon for that purpose; the horses and mules sold and handled by said parties of the second part at said market on said premises which it may be necessary to ship to or from said market, to be shipped over the railroads of the party of the first part so far as possible without loss and inconvenience to said parties of the second part, and to the fullest extent that said shipping can be controlled or influenced by said parties of the second part by using all their powers and best endeavors to that end.

The parties of the second part covenant and agree to pay to the said party of the first part the said rent above reserved, on the days and in the manner limited and prescribed as aforesaid for the payment thereof, without any deduction or delay; and further covenant and agree their proper costs and charges to bear, pay and discharge all taxes, duties and assessment which may during the said term hereby granted, be charged, assessed or imposed upon the said demised premises.

The parties of the second part covenant and agree not to assign this lease or underlet said premises or any portion thereof without the consent in writing of the party of the first part, and further covenant and agree that said premises shall be used only for the purposes hereinbefore specified.

And the said parties of the second part hereby assume all risk of loss or damage by fire to the premises hereby demised, or to any structures or property which may be thereon during the terms of this lease, or during any extension or renewals thereof, and hereby expressly agree that the said party of the first part shall in no case be liable for any such loss or damage, in whatsoever way or under whatsoever circumstances such fire may be caused, whether by or on account of the negligence of said party of the first part, its agents or servants, or otherwise.

The said parties of the second part covenant and agree that all buildings and structures erected by them upon the said demised premises shall be built, and at all times maintained during the term hereby granted, in accordance with the plans and in a manner which shall be approved by, and be satisfactory to, the General Live Stock Agent, for the time being, of the party of the first part, or such other officer or agent of the party of the first part as shall be by the party of the first part designated to examine and approve such buildings and structures, provided always that such buildings and structures, may be such as are, so far as practicable, best adapted to the uses and purposes of said horse and mule market.

The parties of the second part further covenant and agree to at all times during the said term hereby demised, use the said demised premises and conduct a horse and mule market thereon in a manner which shall be satisfactory in all respects to the party of the first part and the officers thereof, it being the intention of all the parties hereto, and a part of the consideration moving the party of the first part to make this lease, that the said demised premises shall be conducted in the interest of the traffic and business of the party of the first part.

The parties of the second part further covenant and agree that upon paying the taxes, duties and assessments, which may from time to time be charged, assessed or imposed upon the said demised premises, they will obtain and furnish to the General Counsel of the party of the first part properly receipted bills therefor, and it is understood and agreed by and between the parties hereto, that in case the parties of the second part shall at any time fail to pay any such tax, duty or assessment prior to the time when penalties or interest commence to run thereon, then and in any such case the party of the first part may pay such tax, duty or assessment, with any penalty or interest due thereon, and the amount so paid shall thereupon become due and payable by the parties of the second part to the party of the first part, and such payment may be enforced in the same manner as the payment of the rent herein reserved.

It is understood and agreed by and between the parties hereto that in case at the expiration of the term hereby granted, this lease is not renewed for a further term, the parties of the second part may at any time within thirty (30) days after the expiration or other termination of this lease, remove all buildings and structures erected by them upon the said demised premises, including the buildings and structures now owned by them on said demised premises, provided the said demised premises are left in as good condition as they are now in; but it is expressly understood and agreed by and between the parties hereto, that all buildings and structures erected by the parties of the second part upon the said demised premises, including the buildings and structures now on said demised premises, which are not so removed within thirty (30) days after the expiration or other termination of this lease, shall thereupon become and be absolutely the property of the party of the first part.

The parties of the second part covenant and agree to surrender the premises hereby demised at the expiration of the said term, or at any time when said lease shall be terminated as aforesaid, in as good state and condition as they are now in reasonable use -and wear thereof and damages by the elements excepted.

The covenants and agreements herein contained shall inure to the benefit of, and be binding upon the successors, executors, administrators and assigns of the parties hereto respectively.

WITNESSES.

Prior to February 1, 1906, the authorized and outstanding capital stock of petitioner had a par value of $100,000 and petitioner was the owner of the lease above set forth and nine horse barns located on the leased premises. On February 1, 1906, a combination was effected of the business of petitioner and that of a competing concern known as the Hickock-Aldrich Co., which latter company had been organized and conducted by A. D. Cronk on a site about four blocks from the business of petitioner. The Hickock-Aldrich Co. had been very successful and, at the time of the combination of the two busi-

nesses, was doing a majority of the horse commission business in Buffalo. To bring about the discontinuance of business by Hickock-Aldrich Co. and secure the valuable services of A. D. Cronk, it was arranged to turn over to Cronk one-third of the outstanding capital stock of petitioner and a changed ownership of the remaining two-thirds of the capital stock took place.

New books of account were opened by petitioner on February 1, 1906, the opening entry on the journal charging to "Bailey Plant" $12,500 and to "Plant and Lease" account $87,500, and crediting capital stock account $100,000. No segregation of separate values of the lease and of the plant has ever been made on the books of account of petitioner and no separate value attaches to either asset. In the years 1918 to 1921, petitioner wrote off on its books of account, $5,000 each year for the exhaustion of its plant and lease asset.

On February 13, 1913, the lease expiring on May 1, 1914, was renewed for a period of 15 years, or to expire on May 1, 1929. The material provisions of the renewal lease were as follows:

THIS INDENTURE, Made this thirteenth day of February One thousand nine hundred and thirteen, between THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, hereinafter called the Lessor, and the CRANDALL HORSE COMPANY, a corporation duly organized under the laws of the State of New York, hereinafter called the Lessee.

WITNESSETH, That said Lessor in consideration of the rents to be paid and the covenants to be performed by said Lessee as hereinafter recited, hereby leases unto said Lessee, the following described premises, viz: All that parcel of land situate in the City of Buffalo, County of Erie, and State of New York, bounded and described as follows:

*　　　*　　　*　　　*　　　*　　　*　　　*

Together with the appurtenances, for the term of fifteen (15) years from the first day of May, one thousand nine hundred and fourteen, unless sooner terminated, at the annual rent or sum of One thousand dollars ($1,000).

The premises above described are let and are to be used for the following purposes only:

Site for buildings and structures of Lessee, for the purpose of a horse and mule market.

It is understood and agreed by and between the parties hereto that if said Lessee shall have paid the rent as aforesaid, in full and without default, and shall have faithfully kept and performed every and all the terms and conditions herein by it to be kept and performed, and not otherwise, it may within thirty days after the expiration or other termination of this lease, remove all buildings and structures now on or erected by it upon the said demised premises during the said term of this lease, rent being paid during said time upon the same terms as herein stated, PROVIDED, the said demised premises are left in as good condition as they were in before such buildings and structures were erected thereon; BUT it is expressly understood and agreed by and between the parties hereto that all buildings and structures now on or erected by said Lessee upon said demised premises which are not so removed shall thereupon become and be absolutely the property of said Lessor, and may be removed by it, and said Lessee hereby conveys the same absolutely to said Lessor, its successors or assigns.

It is mutually understood and agreed by and between the parties hereto, that Lessee shall have and is hereby given the privilege of renewing this lease for an additional term of five years from and after May 1, 1929, provided said lease is in effect at that time and the demised premises or any part thereof are not needed by Lessor for railroad purposes, such renewal term to be upon the same terms and conditions herein contained, except as to any further right of renewal, provided Lessee gives written notice to Lessor of its intention and desire to take such renewal at least six (6) months prior to said first day of May, 1929, and within three months after such notice is served said Lessor will determine whether the demised premises or any part thereof are needed by it for railroad purposes and advise Lessee of such determination, failing which the renewal term shall take effect and commence on the date aforesaid.

The lease expiring on May 1, 1929, will not be renewed because the general improvements and the erection of a $12,000,000 station by the lessor in the neighborhood where petitioner's plant is located make it impossible to continue a horse business in that locality. At the expiration of the lease on May 1, 1929, the horse barns of petitioner will possess no salvage value.

The March 1, 1913, value of the plant and leases was $87,500, and this value is subject to exhaustion ratably over the period from March 1, 1913, to May 1, 1929.

Subsequent to March 1, 1913, the following additions were made to plant and lease:

| Year | Addition | Cost |
|---|---|---|
| 1913 | Barn | $3,367.61 |
| 1914 | Barn | 1,540.00 |
| 1915 | Barns | 11,813.38 |
| 1916 | Horse hospital | 4,000.00 |

The costs of these additions are subject to exhaustion ratably over the remaining life of the lease. The amount of cost remaining unexhausted at the beginning of each year is properly allowable in invested capital for that year.

In 1914, petitioner reduced the book value of its plant and lease account from $87,500 to $46,022, by a charge to undivided profits account, the amount of the write-off being $41,478.

#### OPINION.

MILLIKEN: From a consideration of the evidence, we are satisfied that the aggregate fair market value of the leaseholds and of the barns on March 1, 1913, was not less than $87,500, and petitioner is, accordingly, entitled to annual deductions from income for the exhaustion of such value ratably over the remaining life of the combined leaseholds to May 1, 1929. Respondent reversed.

Petitioner contends that there was a reorganization in 1906, and the leasehold and barns were then paid in for the capital stock of a

new corporation and had a cash value of $87,500 for invested capital purposes. After a careful study of the record, we conclude that the evidence fails to sustain petitioner, for it is evident that petitioner was organized prior to 1906, its full authorized capital stock was outstanding prior to 1906, and it was the owner of the leasehold and barns prior to 1906. Respondent has refused to allow any value for the leasehold and the barns for invested capital purposes, holding that on May 1, 1914 (the date of expiration of the first lease), the original book value of $50,000 had been fully exhausted. Petitioner contends that a renewal of the lease was promised by the lessor and, therefore, for invested capital purposes, the value should be amortized over a life of 35 years, being the sum of 20 years under the first lease and 15 years under the second lease. The first lease is set forth in full in the findings of fact and upon a consideration of it, we are unable to agree with the petitioner that it contains any right of renewal, even by implication. In our opinion, at no time prior to February 13, 1913, when the second lease was executed, was petitioner entitled to the use of the property later than May 1, 1914, save for the short period of days thereafter allowed it under the lease, within which to remove the barns. This fact definitely limited the exhaustion to a period extending from the date of acquisition of the lease by petitioner from the partnership, to the expiration date, May 1, 1914.

Petitioner secured a renewal of the lease on February 13, 1913, without cost to it. The second lease, therefore, represented no outlay of capital and can not be included in invested capital.

We do not know the separate value attaching to the barns, which were used by petitioner until the expiration of the second lease, and which value, to a small extent, existed on February 13, 1913, and should be exhausted over a period ending May 1, 1929. Such facts not being before us, we can not determine the amount of invested capital to which petitioner is entitled, and the respondent, therefore, is sustained.

It is in evidence and uncontroverted, that petitioner decreased the amount of undivided profits on its books in 1914, by an arbitrary write-off amounting to $41,478, to reduce the book value of plant and lease account. We are of the opinion this reduction should be restored to invested capital.

The remaining question relates to capital additions subsequent to March 1, 1913. Our findings of fact dispose of this issue and should be observed in redetermining the deficiency.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, PHILLIPS, and VAN FOSSAN.